**Jamel WHITT, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. ED 97046.**

Missouri Court of Appeals, Eastern District, Division Four.

May 29, 2012.

Scott Thompson, District Defender, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Chief Judge.

### Introduction

Jamel Whitt ("Whitt") appeals from the motion court's denial without an evidentiary hearing of his motion for post-conviction relief. Whitt was convicted of first-degree murder and armed criminal action for the death of Rodney Staples. We affirmed Whitt's conviction on direct appeal in *State v. Whitt*, 330 S.W.3d 487 (Mo.App. E.D. 2010). Whitt subsequently filed a motion for post-conviction relief under Rule 29.15 [1] alleging his defense counsel at trial was ineffective for failing to assert a not guilty by reason of insanity defense; failing to produce additional witness testimony at Whitt's competency hearing to show Whitt had a long history of psychiatric disorders; and failing to move to suppress Whitt's confession to police officers. The motion court denied, without an evidentiary hearing, Whitt's motion for post-conviction relief. Because Whitt failed to allege facts that, if proven, entitle him to relief, we affirm the judgment of the motion court.

### Factual and Procedural History

On April 24, 2005, Whitt asked a stranger in a parked car for a cigarette and then informed him that he had just killed his grandmother's boyfriend, Rodney Staples ("Staples"). The driver of the car, Duvalle Perry ("Perry") called 911 and asked Whitt to tell the operator about the killing. Whitt told the 911 operator that he

---

1. All rule references are to Mo. R.Crim. P., 2010 unless otherwise indicated.

stabbed Staples and put his clothing and the knife in a nearby trash chute. Whitt then used the phone to call another family member and told her that he had stabbed Staples.

Officer Theophilus Buford ("Officer Buford") arrived at the scene and requested Whitt hang up the phone. Whitt told Officer Buford that he wanted to talk to someone because he had just killed Staples. Officer Buford arrested Whitt, read Whitt his *Miranda* rights, and placed Whitt in his patrol car. Whitt said that he understood his *Miranda* rights and continued talking to Officer Buford. Whitt told Officer Buford that when he entered his grandmother, Mary Morant's ("Morant"), apartment that night he found Morant "choked out" on the floor of the apartment. Whitt said that he found Staples was in the apartment at the time and Whitt attacked Staples with a knife. Whitt informed Officer Buford that he stabbed Staples multiple times, walked away, came back, and stabbed him several more times.

Police and technicians responded to Morant's apartment and found Morant and Staples dead. Morant had been choked to death and had defensive cuts on her hands. Staples had multiple stab wounds and his penis had been cut off and placed on his shoulder. Multiple knives were scattered around the apartment near both bodies. Evidence technicians found Whitt's DNA among the blood samples they retrieved at Morant's apartment. Blood containing Morant's DNA was also found on the clothes Whitt was wearing at the time he was arrested. Whitt was charged with two counts of first-degree murder and one count of armed criminal action.

On April 25, 2005, at Whitt's first court appearance, the trial court ordered a medical evaluation to determine Whitt's competency. Whitt moved to have the medical evaluation confined to whether he was competent to stand trial. On July 26, 2005, the trial court entered an order finding Whitt lacked the mental fitness to proceed to trial. Whitt was subsequently moved to Fulton State Hospital in the custody of the Missouri Department of Health. On August 30, 2006, for a second time, the trial court reviewed Whitt's competency to stand trial and again declared Whitt incompetent to assist in his own defense. On February 9, 2007, the Missouri Department of Health filed a motion to proceed after staff of Fulton State Hospital determined Whitt was competent to stand trial. On June 22, 2007, over Whitt's objection, the trial court entered an order finding Whitt no longer incompetent to assist in his own defense, and granted the Department of Health's motion to proceed.

At a bench trial, State's medical examiner testified that Staples died as a result of multiple stab wounds, but that some of his wounds had been inflicted after death. State's medical examiner testified that Morant had been killed by manual strangulation. The medical examiner further testified that Staples died before Morant. Dr. Erica Kempker ("Kempker"), a psychologist who treated Whitt at Fulton State Hospital after Whitt was found incompetent to assist in his defense, testified that Whitt was competent to stand trial. Dr. Kempker further testified that she observed evidence that Whitt had previously malingered symptoms of mental incompetence.

Whitt did not testify at trial, but offered a "defense of others" defense. Whitt called two of Morant's sisters, who were also Whitt's aunts, to testify on his behalf. Both witnesses testified that Whitt and Morant had a loving relationship with no history of violence. Rather than presenting a not guilty by reason of insanity defense, Whitt argued that he killed Staples in defense of Morant. Whitt argued that

he entered Morant's home, discovered her body, and killed Staples in a fit of passion. The trial court entered a judgment convicting Whitt on all counts. The trial court sentenced Whitt to two concurrent life sentences and a concurrent 10–year sentence. This Court affirmed the trial court's judgment in *State v. Whitt*, 330 S.W.3d 487, 488 (Mo.App.E.D.2010).

Whitt timely filed a motion for post-conviction relief under Rule 29.15. In his amended motion, Whitt argued that defense counsel was ineffective in failing to present a not guilty by reason of insanity defense, for failing to produce additional witness testimony at Whitt's competency hearing, and for failing to file a motion to suppress Whitt's confession to police. The motion court entered a judgment denying Whitt's motion without an evidentiary hearing. This appeal follows.

### Points on Appeal

On appeal, Whitt argues the motion court erred in denying his motion without an evidentiary hearing because he alleged facts not refuted by the record establishing defense counsel was ineffective for (1) failing to assert a not guilty by reason of insanity defense; (2) failing to produce additional witness testimony at Whitt's competency hearing to show Whitt's long history of psychiatric disorders; and (3) failing to move to suppress Whitt's confession to police officers.

### Standard of Review

Appellate review of a motion court's denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court were clearly erroneous. Rule 29.15; *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989). The motion court's findings and conclusions are presumptively correct and will be overturned only when this

Court is left with a "definite and firm impression that a mistake has been made" after reviewing the entire record. *Vaca v. State*, 314 S.W.3d 331, 334 (Mo. banc 2010).

### Discussion

To obtain an evidentiary hearing on claims of ineffective assistance of counsel, an appellant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney, and the appellant was thereby prejudiced. *Coates v. State*, 939 S.W.2d 912, 914 (Mo. banc 1997). To show prejudice, the appellant must demonstrate a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Deck v. State*, 68 S.W.3d 418, 426 (Mo. banc 2002), *citing Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

We address the motion court's denial without an evidentiary hearing of each of Whitt's claims of ineffective assistance of counsel in turn.

### I. Defense counsel was not ineffective in failing to present a defense of not guilty by reason of insanity.

In his first point on appeal, Whitt argues that the motion court erred in denying without an evidentiary hearing his claim that defense counsel was ineffective in failing to present a defense of not guilty by reason of insanity.

When reviewing a claim for ineffective assistance of counsel, there is a strong presumption that defense counsel's strategy was reasonable and our scrutiny of defense counsel's performance is highly deferential. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (internal citation omit-

ted). "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.*

 Reasonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as the basis for a claim of post-conviction relief if the appellant is later convicted. *Brown v. State,* 353 S.W.3d 675, 679 (Mo.App. E.D.2011), *quoting Clayton v. State,* 63 S.W.3d 201, 206 (Mo. banc 2001). Defense counsel is not ineffective in pursuing one reasonable trial strategy, even to the exclusion of another reasonable trial strategy. *Clayton,* 63 S.W.3d at 207–08. "A strategic decision is reasonable if it was made with the same skill and diligence another reasonably competent attorney would use under similar circumstances." *Id.* at 207. (internal citation omitted).

The record before us indicates that defense counsel chose to pursue the strategy of "defense of others," and chose not to pursue a defense based upon Defendant's mental incapacity. Given the record, we are not persuaded that defense counsel's strategy was unreasonable under the circumstances.

The reasonableness of defense counsel's decision to forgo a defense of not guilty by reason of insanity must be viewed in the context of defense counsel's decision to present a different defense. We acknowledge that presenting multiple and even inconsistent defenses in a given case may be reasonable trial strategy. However, choosing to focus only on one reasonable defense while ignoring a different but potentially viable defense, may be just as reasonable. *See Clayton,* 63 S.W.3d at 207–08. (explaining there is no *per se* rule against presenting multiple defenses, but to do so runs the risk of harming defense counsel's credibility with the jury in some cases).

After carefully reviewing the entire record, we find that Whitt has failed to overcome the presumption that defense counsel's decision to forgo a defense of not guilty by reason of insanity was not reasonable trial strategy. Statements made by Whitt to a lay witness, 911 operator and a responding police officer almost immediately after the stabbing consistently suggested that Whitt acted in defense of his grandmother. The rationale for defense counsel's decision to present a defense of others is clear to this Court. We agree with the motion court that "[i]t is apparent from the record here that [Whitt's] mental condition was thoroughly and repeatedly assessed, and that defense counsel made an intentional decision to pursue the affirmative defense of defense of another rather than a defense based on [Whitt's] mental condition."[2] Whitt's multiple confessions to bystanders, family members, and eventually police asserted that Whitt killed Staples in a fit of passion,

---

**2.** The motion court mischaracterized "defense of another" as an affirmative defense. However, the defense is properly asserted as a special negative defense. Section 563.031.5 ("The defendant shall have the burden of injecting the issue of justification under this section. If a defendant asserts that his or her use of force is described under subdivision (2) of subsection 2 of this section, the burden shall then be on the state to prove beyond a reasonable doubt that the defendant did not reasonably believe that the use of such force was necessary to defend against what he or she reasonably believed was the use or imminent use of unlawful force."); *see also State v. Stuckey,* 680 S.W.2d 931, 936 (Mo. banc 1984) ("Instruction on the special negative defense also is essential in a situation in which the defendant claims that he killed a person in lawful defense of another.").

or in defense of Morant. The defense Whitt presented at trial was that Whitt came home to unexpectedly find his grandmother injured, and in a fit of passion assaulted her apparent attacker. The record in this case is clear that defense counsel reasonably elected to pursue a strategy of defense of another and forego a not guilty by reason of insanity defense.

Moreover, the record does not include evidence that is so suggestive of Whitt's mental incapacity at the time he killed Staples such that it was unreasonable for defense counsel not to present an insanity defense. The record does not indicate that Whitt exhibited behavior that necessarily suggests mental incapacity at the time Staples was killed. Whitt confessed to killing Staples shortly after the incident. Perry testified that Whitt was crying and appeared remorseful. In fact, Perry affirmatively stated that Whitt appeared to understand all Perry's questions. Similarly, Officer Buford testified that Whitt said he understood his *Miranda* rights, never informed Officer Buford that he did not understand his rights, and never showed any hesitancy in talking to Officer Buford. Officer Buford testified that Whitt appeared calm during his confession, becoming upset only after being forced to remove his clothes for booking. The testimony from those witnesses who had contact with Whitt immediately following the stabbing does not suggest Whitt was acting in a bizarre or odd manner, or acted in any way suggestive of mental incapacity. While the subsequent issue of Whitt's competency to stand trial raises the possibility that there may have been a basis for defense counsel to consider presenting a not guilty by reason of insanity defense, sufficient evidence exists that defense counsel acted reasonably in electing to present the alternative defense of others defense.

As the motion court noted, the record clearly demonstrates that defense counsel's decision as to which defenses to pursue was a matter of reasonable trial strategy. Given the deference this Court gives to the strategic decisions of defense counsel, and the objective reasonableness of defense counsel's decision in this case, Whitt was not entitled to an evidentiary hearing for his claim of ineffective assistance of counsel for failure to raise a not guilty by reason of insanity defense at trial. Point denied.

## II. Defense counsel was not ineffective for failing to elicit additional witness testimony.

In his second point on appeal, Whitt argues that defense counsel was ineffective for failing to elicit certain witness testimony prior to trial. Specifically, Whitt argues that defense counsel's performance was deficient for failure to offer testimony by Whitt's mother and former doctors at a competency hearing.

The choice of whether to call a witness at trial or during a hearing is a matter of trial strategy and will not ordinarily support a claim of ineffective assistance of counsel. *See Strong v. State*, 263 S.W.3d 636, 652 (Mo. banc 2008). To prevail on a claim of ineffective assistance of counsel under a theory that defense counsel failed to elicit witness testimony, movant has the burden of showing the testimony the witness would have offered and that the omitted testimony would have benefited movant's defense. *Strong*, 263 S.W.3d at 652; *White v. State*, 939 S.W.2d 887, 896 (Mo. banc 1997).

After reviewing the record, we find that Whitt did not meet the burden of alleging facts which, if proven, demonstrate defense counsel was ineffective in failing to call Whitt's mother and doctors as witnesses at Whitt's competency hearing.

The full text for Whitt's allegation in his Amended Motion for Post–Conviction Relief, states:

> Trial counsel was ineffective for failing to follow through with a scheduled competency hearing. Trial counsel has an obligation not to stipulate to Defendant's competency. Trial counsel failed to call, as a witness for the defense, Movant's mother, who has thorough knowledge as to Movant's medical, psychiatric, and personal history, all of which indicate that Movant was incompetent to proceed at trial. Trial counsel further failed to call any doctors who had previously found Movant incompetent, and those who had diagnosed Movant with psychiatric disorders throughout his life.

In his motion, Whitt argues that his counsel was ineffective for failing to call his mother and doctors as witnesses because they were familiar with his mental health history. However, Whitt does not allege what the content of those witness's testimony would have been if they had been called. Whitt was required to allege the substance of the omitted testimony in order to carry the burden of alleging facts not refuted by the record that demonstrate defense counsel was ineffective in failing to call his mother and doctors as witnesses. *See Strong*, 263 S.W.3d at 652; *White*, 939 S.W.2d at 896. Without knowing the substance of the uncalled witness's testimony, this Court cannot determine whether that testimony would have provided a basis for the trial court to find that Whitt was not competent to proceed to trial. *See White*, 939 S.W.2d at 899 (defense counsel was not ineffective in failing to call an alleged alibi witness when movant failed to allege witness's testimony would have provided movant an alibi). Because Whitt failed to allege the testimony the witnesses would allegedly have offered, Whitt cannot demonstrate that he was prejudiced by defense counsel's failure to call either witness. *See State v. Beckemeyer*, 332 S.W.3d 344, 347 (Mo.App.E.D.2011). Point denied.

## III. Defense counsel was not ineffective for failing to file a motion to suppress Whitt's confession.

In his final point on appeal, Whitt argues that defense counsel was ineffective in failing to file a motion to suppress Whitt's confession to police that he committed the underlying crimes. Specifically, Whitt argues that defense counsel should have sought suppression of that evidence on grounds that his confession was involuntary by reason of mental incompetence at the time of the confession.

After reviewing the entire record, we find that Whitt was not prejudiced by the admission of Whitt's confession to Officer Buford. To show prejudice, the appellant must demonstrate a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Deck v. State*, 68 S.W.3d 418, 426 (Mo. banc 2002), *citing Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A *Miranda* warning is not required unless the suspect has been placed in custody. *State v. Glass*, 136 S.W.3d 496, 510 (Mo. banc 2004), *citing Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). A custodial interrogation occurs only when police officers question an individual who has been deprived of his or her freedom of action in some significant way. *Glass*, 136 S.W.3d at 511.

The evidence presented at trial was that Whitt informed the first police officer he saw, Officer Buford, that he "wanted to talk with someone because he had just killed his grandmother's boyfriend." This statement took place before Whitt was placed into custody, and Officer Buford

had not exerted any authority or restrained Whitt's freedom of action in any way. Therefore, Whitt's initial confession to Officer Buford would be admissible as a non-custodial confession even if the later custodial confession to police was suppressed. *See Glass,* 136 S.W.3d at 511. In addition, Whitt also informed Perry, a 911 operator, and a family member that he killed Staples. All three statements were non-custodial confessions, which also would have been admissible. There was also direct DNA evidence connecting Whitt to the crimes. Given the admissibility of Whitt's multiple other confessions and the significant physical evidence establishing Whitt's guilt, Whitt cannot demonstrate a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *See Deck v. State,* 68 S.W.3d 418, 426 (Mo. banc 2002), *citing Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Point denied.

### *Conclusion*

Because Whitt failed to allege facts not refuted by the record and which entitle him to relief, we affirm the judgment of the motion court.

PATRICIA L. COHEN and ROBERT M. CLAYTON III, JJ., concur.